J-S23015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: G.F.W., A MINOR

APPEAL OF: S.N.C., FATHER

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 2914 EDA 2015

Appeal from the Decree entered August 25, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000454-2015
CP-51-DP-0000738-2013

BEFORE:  PANELLA, J., OTT, J., and FITZGERALD*, J.

MEMORANDUM BY PANELLA, J.                    **FILED JULY 06, 2016**

S.N.C. ("Father") appeals from the decree entered on August 25, 2015, granting the petitions filed by the Philadelphia Department of Human Services ("DHS"), seeking to involuntarily terminate his parental rights to his dependent, minor child, G.F.W., a girl born January 2012 ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and to change Child's permanency goal to adoption. Father is currently serving a lengthy prison sentence for beating his four-month-old son to death. We affirm.

On July 13, 2013, DHS filed a petition to terminate Father's parental rights to Child and a petition to change Child's permanency goal to adoption.

_____
* Former Justice specially assigned to the Superior Court.

The trial court held a hearing on both petitions on August 25, 2015. At the hearing, DHS presented the testimony of DHS social worker, Gwen Ross. Father testified on his own behalf.

Child was born in January 2012, and Child's sibling, S., was born in January 2013. Child and S. shared the same birth parents. On April 9, 2013, DHS received a Child Protective Services ("CPS") report alleging that S. had been taken to the Children's Hospital of Philadelphia ("CHOP") in cardiac arrest and with catastrophic injuries. S.'s abdominal organs had been crushed and his abdomen was full of blood. S. had fractures of both clavicles, and had sustained numerous rib fractures in various stages of healing. S. also had a lacerated liver and injuries to his spleen. S. was certified as a near fatality. The report also alleged that Child and three of his siblings were in the waiting room of the hospital and that Mother and Father refused to have them medically evaluated. On April 10, 2013, S. died.

That same day, DHS also received a CPS report alleging that Child had been evaluated at CHOP, and had multiple fractures in various stages of healing. Child also had a possible old right tibia fracture. Mother and Father could not explain Child's injuries. That same day, DHS obtained an Order of Protective Custody ("OPC") for Child.

A shelter care hearing was held on April 12, 2013, and the trial court ordered that Child be temporarily committed to DHS. On April 13, 2013, Father was arrested for the death of S. He was later convicted of third

degree murder, involuntary manslaughter, and endangering the welfare of children and sentenced to twenty to forty years at a state correctional institution.[1]

On November 18, 2013, an adjudicatory hearing was held. Child was adjudicated dependent and committed to the care and custody of DHS. The case was listed on a regular basis before the trial court for the purpose of determining and reviewing the permanency plan of Child. Child has been in foster care for approximately two years and has been placed in three foster homes.

As noted, on August 25, 2015, a termination of parental rights hearing for Child was held. Following the hearing, the trial court entered a decree terminating Father's parental rights pursuant to § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, and an order changing Child's permanency goal to adoption pursuant to § 6351 of the Juvenile Act.

Father timely appealed. In his brief on appeal, Father raises the following issues:

> 1. Whether the [t]rial [c]ourt erred by terminating the parental rights of Appellant, Father, under 23 Pa.C.S.A. § 2511 subsections (a)(1), (a)(2), (a)(5) and (a)(8)?
>
> 2. Whether the [t]rial [c]ourt erred by finding, under 23 Pa.C.S.A. § 2511(b), that termination of Appellant's parental rights best serves [Child's] developmental, physical and emotional needs and welfare?

---

[1] This Court recently affirmed Father's judgment of sentence. To keep the parties anonymous in this filing we decline to provide a citation to the memorandum decision.

Father's Brief, at 4.[2]

Initially, we review the termination decree according to the following

standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the

---

[2] Father waived any challenge concerning the trial court order changing Child's permanency goal from reunification to adoption, pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351, by failing to include this issue in his concise statement of matters complained of and statement of questions involved portion of his brief. **See Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (finding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).

record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (citations omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, the decree terminated Father's parental rights pursuant to § 2511(a)(1), (2), (5), (8), and (b). This Court must agree with only *one* subsection, in addition to § 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en

- 5 -

*banc*). Herein, we review the decree pursuant to § 2511(a)(1) and (b), which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parents by conduct continuing for a period of at least six months immediately preceeding the filing of this petition either have evidenced a settled purpose of relinquishing parental claim to said children or have refused or failed to perform parental duties.
>>
>> . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

With respect to subsection (a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." ***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008) (citing ***In re Adoption of R.J.S.***, 901 A.2d 502, 510 (Pa. Super. 2006)).  Further,

> [o]nce the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment

contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Id*. (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

Regarding the definition of "parental duties," this Court has explained that

[t]here is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

- 7 -

In ***In re Adoption of S.P.***, ***supra***, our Supreme Court discussed ***In re Adoption of McCray***, 331 A.2d 652 (Pa. 1975), a case wherein the Court considered the issue of the termination of parental rights of incarcerated persons involving abandonment, which is currently codified at § 2511(a)(1). The ***S.P.*** Court stated:

> Applying in ***McCray*** the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." ***Id***. at 655. We observed that the father's incarceration made his performance of this duty "more difficult." ***Id***.

47 A.3d at 828. The ***S.P.*** Court continued:

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

***Id***. (citing ***McCray***, 331 A.2d at 655).

In this case, Father's history with Child is well documented in the record. (And he brutally murdered his four-month-old son.) Father's parenting skills and concern as a parent are minimal and he has not managed to finish his reunification plan over a period of six months. None of the objectives in Father's plan has been completed. The trial court found that, until Father completes the plan, success cannot be declared, and that

- 8 -

the importance of the service plan and the goals it identifies for Child cannot be overemphasized. *See In re J.S.W.*, 651 A.2d 167 (Pa. Super. 1994).

The trial court found it clear from the record that, for a period of six months leading up to the filing of the termination petition Father has undertaken no efforts to attempt to maintain any sort of consistent involvement with the Child, either before or during his incarceration, and failed or refused to perform parental duties for Child. Father himself testified that he does not have a relationship with Child.

In addition, DHS did not arrange visitation between Father and Child due to the young age of Child and the fact that Father was ordered to stay away from Child until she reaches the age of maturity. The order was aptly issued as part of Father's sentence for the murder of S.

Child has been in foster care for twenty-two months, and testimony established that Child is in a safe environment where her needs are being met. Thus, after a careful review of the record, we find no merit to Father's argument concerning § 2511(a)(1).

Next, in reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the

determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In reviewing the case, the trial court found that Father cannot care for the Child's needs because he still has serious problems which have not been resolved, and he has no parental relationship with Child. (And one cannot forget that he is serving a very lengthy prison sentence at a state correctional institution for infanticide.)

With regard to section 2511(b), the evidence reveals that Father does not have a strong bond with the Child. Foster parents have taken care of all of Child's needs, and the DHS caseworker testified that, at the time of the hearing, Child was about to be placed in a pre-adoptive home with the agency. The trial court found that there is no evidence that Child would be adversely affected if her relationship with Father is severed.

Competent evidence in the record shows Father failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting . . . ." *In re K.K.R.S.*, 958 A.2d 529, 534 (Pa. Super. 2008). He did not put himself in a position to assume daily parenting responsibilities so that he could develop a real bond with the Child. *See In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003).

Although Father may love the Child and desire an opportunity to serve as her father, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In Re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (citations omitted). Rather, a parent's basic constitutional right to the custody and rearing of her child is converted, upon the failure to fulfill his parental duties, to the child's right to have proper parental care. *See In re Z.P.*, 994 A.2d at 1120.

The failure to terminate Father's parental rights would condemn Child to a life in foster care with no possibility of obtaining a permanent and stable home. Based on the foregoing evidence, which we have reviewed in accordance with the relevant statutory and case law, we conclude that the trial court did not abuse its discretion in involuntarily terminating Father's parental rights pursuant to § 2511(b).

Accordingly, we affirm the decree terminating Father's parental rights to the Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b), and changing Child's permanency goal to adoption.

Decree affirmed.

Justice Fitzgerald joins the memorandum.

Judge Ott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2016